Kirkpatrick C. J.
There was a certiorari directed to the Court of Quarter Sessions of the peace, of the county of Moms, to remove the above indictment into this court, and the justices have sent up the indictment itself, probably taken from their files (though it is not marked filed) together with the original recognizance upon the allowance of the writ, and a copy of their order, directing the said writ to be returned; all which are certified by the clerk, under the seal of the court; and which, in the said *190 certificate, are said to be all things touching the said in-in the said court remaining.
There is no record returned, nor materials of which this court can make a record; there is no caption; it qoes no^ appear when the indictments were found, nor by whom they were found, nor by what authority, nor to whom presented.
The mere endorsement of the time of finding, on the back of the indictment, or the placing of it at the head or at the foot of the same, by the Attorney General or by the clerk, is not sufficient. It makes no part of the record. It must always appear, and it can lawfully appear only in what is called the caption, that *is, that part of the record which recites all the circumstances introductory of the indictment itself.
The legitimate office of the certiorari, in these cases, is to bring up the record, and not the papers, from the files; unless such papers be specially called for; and this record, when brought up, must contain distinctly, in itself all the matters above specified ; for otherwise it contains no lawful charge upon which the citizen can be put to plead, or brought to trial.
But inasmuch as the Attorney General and the turnpike company, for the sake of saving trouble and expense, have submitted the question, as to the liability of the said company to keep up and maintain the said bridge, in the said first indictment mentioned, upon a case by them stated; and inasmuch as the court are willing to meet their wishes in this respect, and to put an end to the controversy, especially as it affects the public travel-ling, and general convenience of the country, therefore they have thought proper to look into it.
Having the liability of the company only in view, it is not necessary to examine the form of the indictment, to which objection might be raised. It is sufficient to say, that it charges, in substance, that a certain bridge, commonly called the log bridge, in the county of Morris, which the said Company were bound to keep up and maintain, was from the 1st of October 1815, until the finding of the said indictment, suffered to be in great decay, broken, ruinous, &c. And
*191 The case raised upon this indictment, and sxibmitted to the consideration of the court, is in these words, wit. (See case.)
Upon looking into this act, we find it enacted among other things in sec. 10. “ That as soon as the said Company shall have completed twelve miles of the said road, they may apply to the Governor, who shall appoint commissioners to view the same, and if they shall report that the same is finished according to the true intent and meaning of the said act, he shall by license under his hand, permit them to erect two gates or turnpikes thereon, and to receive and take toll, &c. and in like manner, for every six miles thereafter so made, approved, &c. to erect one gate, take toll,” &c.
We find it further enacted in sec. 14, “ That if the said Company shall not commence their operations within two years after the passing of the said act, or shall not within seven years after*wards complete the said road, then all their powers shall cease, be void, and of no effect, so far as may relate to the parts unfinished.”
In the making of the road, the act prescribes no particular place of beginning, no particular portion which shall constitute the said first twelve miles; nor does it direct that the reaches of six miles, afterwards to be made and licensed, shall be contiguous to, or in continuation of the said first twelve miles or of one another.
All this was left to the discretion of the Company; and it was so left, no doubt, because it was obvious that the private interest of the Company was so blended with the public convenience, that the one could not be promoted without promoting the other also. The Company, in the exercise of this discretion, have thought proper to leave certain intermediate spaces unmade, and so far as relates to these, their power, by the provisions of' the act, has long since ceased. Instead, therefore, of being obliged to go on and finish these intermediate spaces, of which the space on which this bridge stands is one, they are expressly prohibited from so doing. The law cannot impose a penalty for not doing that which it prohibits to be done.
*192 According to the agreement of the Attorney General, therefore, let a nolle prosequi be entered.
Southard J.
The case submitted, leaves but little for ^g c01irt to resolve.
' The Company is indicted for not repairing a bridge on the line of the road. The defence is, that it is not a part of the road, and that they have now neither power over it, or authority to build or repair it. And this defence seems to be admitted by the facts stated. It is probable that the legislature did not anticipate such a case as has occurred. It no doubt intended, that the parts of the road which were made, should lie adjoining each other, and not that a short space should be permitted to intervene, throwing upon the public so expensive a burthen, as this bridge.
But we must construe the grant to the Company, according to the manifest meaning of the words, and these seem to justify the following remarks. 1. The parts made must be on the line of the road, and contain six miles, but need not adjoin each other. 2. The power to compel the Company to make the road ^'continuous, if it existed at all, ought to have been exercised before the Governor granted a license; 3. After seven years from the passing of the law, the power of the Company ceased, over all parts of the line of the road, which was not then completed. Nothing short of a legislative act, could revive their power. If these remarks be correct, all doubt is at an end. The state of the case affirms, that the road as it is now used, was regularly licensed; that the distance of thirty-six chains, including this bridge, never was turnpiked or licensed; and that the seven years have long since passed away. It necessarily follows, that the Company cannot make this bridge, and therefore, cannot be convicted under this indictment.'
Nolle prosequi entered.